# CASES DETERMINED

## KAEHLER vs. DIBBLEE, impleaded, etc.

*Successive mortgages — Equitable priority.*

1. A mortgage of land to A., the mortgagor's father, who was in equity the real owner of the land, to secure payment to him of a certain annual sum for his support, *held* posterior in equity to a mortgage of later date given to D. M. & Co. to secure payment of joint notes of the mortgagor and A. for debts due said D. M. & Co. when the prior mortgage was given.

2. The facts that A. was only an accommodation maker of said notes, that they were barred as against A., at the time of suit brought, by the statute of limitations, and that D. M. & Co. knew of the mortgage to A. when they took theirs, do not change the equities of the parties — A. never having been released from liability by any act of the payees in extending the time of payment without his consent, or otherwise.

3. The mortgage to D. M. & Co. is also prior in equity to one of earlier date given at the request of A. as an advancement to his other children, securing the payment of a certain sum to them by the mortgagor. Said last named mortgage must be treated as a voluntary conveyance, fraudulent and void as to D. M. & Co. as creditors of A.

APPEAL from the Circuit Court for *Ozaukee* County.

Foreclosure of a mortgage. In 1857, *John H. Kaehler*, then owning the premises afterwards covered by the mortgage in

suit, conveyed them to one Kritzner (his son-in-law), and took back a mortgage thereof, conditioned for the payment to him and his wife of certain monthly installments during their natural lives. Default having been made by Kritzner, the mortgage was foreclosed by suit commenced in 1859, and at the foreclosure sale, on the 9th of April, 1860, the property was bid in by *Peter F. Kaehler*, who, however, paid nothing but the costs of the foreclosure suit.

A. On the 8th of May, 1860, at the request and by the direction of his father (said *John H. Kaehler*), and in settlement of his indebtedness to the father (as purchaser at the above mentioned sale), *Peter F. Kaehler* executed a bond to his father, conditioned for the payment to him, said *John H. Kaehler*, and his wife Mary Kaehler, or the survivor of them, so long as either of them should live, of the annual sum of $480, in monthly installments of $40 each, commencing June 1, 1860; and, as collateral security, said *Peter F. and his wife*, on the same day, executed the mortgage here in suit.

B. On the same day (May 8, 1860), and for the same consideration, and also at the request of *John H. Kaehler*, *Peter F. and his wife* executed another mortgage, running to *Frederick*, *Julius* and *William H. Kaehler* and *Eleonora Schleuter*, brothers and sister of said *Peter F.*, conditioned for the payment of $900 to each of them on the first of June, 1875, without interest.

Both the mortgages above mentioned were recorded June 5, 1860. Apart from his interest in the mortgaged premises, *John H. Kaehler* owned no property except certain personal property worth about $450, hereinafter mentioned (*infra*, par. D.).

C. In 1859 and 1860, in consequence of various dealings between himself and the firm of Dibblee, Work & Moore, of New York, *Peter F. Kaehler* became largely indebted to that firm; and, in consideration thereof, he, together with his father, executed to the firm their three joint and several promissory notes dated September 22, 1859, February 10, 1860, and April

21, 1860, respectively, for the several sums of $3,116.08, $498.83 and $1,289.44; each of said notes payable at six months from its date. Between the 30th of January, 1861, and the 18th of January, 1867, payments were made on these notes by *Peter F. Kaehler*, amounting in the aggregate to $4,901.87.

D. On the 23d of February, 1861, in consideration of the sale to him of certain personal property of *John H. Kaehler*, *Peter F. Kaehler* executed and delivered to said *John H.* his five promissory notes of that date, one for $50, and each of the others for $100, with interest at ten per cent. per annum from and after November 1, 1861 ; the last four of the notes becoming due on or before the 1st of May in 1863, 1864, 1865 and 1866, respectively. As collateral security for their payment, *Peter F. Kaehler and wife*, on the same day, executed and delivered to said *John H.* another mortgage on the premises above mentioned, which was duly recorded April 4, 1861.

E. On the 15th of October, 1861, in consideration of a *bona fide* indebtedness then existing, *Peter F. Kaehler* executed to his sister *Caroline Kritzner* his note for $1,000, payable in ten years, with interest at ten per cent. payable annually ; and said *Peter and wife*, as collateral security to said note, executed at the same time to said *Caroline* a mortgage of the same premises before prescribed. Afterwards, for value, all the members of the *Kaehler* family agreed that this mortgage to *Caroline Kritzner* should be the *first lien* on the premises.

F. On the 2d of June, 1862, *Peter F. Kaehler and wife*, to secure the sum of $4,904.35, then due and unpaid upon the three above mentioned notes to Dibblee, Work & Moore (par. C.), executed and delivered to *Ezra R. Dibblee* (of said firm) an additional mortgage upon the premises in question, which mortgage was duly recorded the same day.

G. As farther security for the same debt, *Peter F. Kaehler*, on the same day, executed and delivered to *Dibblee* a chattel mortgage on certain store goods and other personal property,

valued at $3.286.28, and this mortgage was duly filed the same day.

H. At the same time, *John H. Kaehler* endorsed and delivered to *Dibblee* the four promissory notes for $100 each, given him by *Peter F. Kaehler* on the 23d of February, 1861, as above stated (par. D.); and also delivered to *Dibblee* the mortgage by which said notes were secured. There were due at that time on said notes $423.31.

Neither *Dibblee* nor the firm of Dibblee, Work & Moore ever extended the time for payment of the notes executed to them by *John H.* and *Peter F. Kaehler* (par. C.).

Some time after the death of Mary Kaehler, to wit, on the 8th of April, 1868, the bond and mortgage to her and *John H. Kaehler* (par. A.) were assigned by the latter to his son *Frederick Kaehler*, and the assignment was duly recorded two days afterward. Default having been made in the conditions of said instruments, this action was brought upon them by *Frederick Kaehler*, apparently in 1870 or 1871. Besides the mortgagors, *Peter F. Kaehler and wife*, the defendants were, the mortgagee, *John H. Kaehler;* his two sons *Julius* and *William H. Kaehler;* his two daughters, *Eleonora Schleuter* and *Caroline Kritzner ;* and also *Ezra R. Dibblee* and one Bornemann. As to the seven defendants last named, it is alleged that they claim some interest in the mortgaged premises, and that their interests are subsequent and subject to the lien of the mortgage in suit.

There were separate answers by *Dibblee, Caroline Kritzner*, and *Peter F. Kaehler*, and a joint answer by *Julius* and *William H. Kaehler* and *Eleonora Schleuter.* *Caroline Kritzner's* answer claimed priority for the lien of her mortgage (par. E). *Dibblee's* answer denied that plaintiff was assignee for a valuable consideration, or lawful owner, of the mortgage in suit, and averred that the pretended assignment to him was made fraudulently to defeat his, *Dibblee's*, rights as trustee for Dibblee, Work & Moore; and he claims in equity a prior lien over all the other parties. The facts alleged in his answer include

those above set forth, and also those hereinafter stated as found by the court.

The averments of the other answers need not be stated.

It appeared at the trial that there was due and unpaid upon the bond secured by the mortgage in suit, $2,204.73 ; upon the note secured by the mortgage to *Caroline Kritzner*, $1,528 ; and upon the three notes of *John H.* and *Peter F. Kaehler* to Dibblee, Work & Moore, secured by the *Dibblee* mortgage, etc., $3,279.44. The bond and mortgage to secure payment of $900 each to *Frederick*, *William H.* and *Julius Kaehler* and *Eleonora Schleuter* (par. B.) would not mature until June 1, 1875. It also appeared that the mortgaged premises could not be sold in parcels without injury, and that they constituted a fund utterly inadequate to the payment of the liens thereon.

The court found the facts as above stated, and also found as facts, 1. That the four notes of *Peter F. Kaehler* for $100 each, endorsed and delivered by *John H. Kaehler* to Dibblee, Work & Moore June 2, 1862 (par. H.), were accepted by them *in part payment* of the amount then owing them from *John H.* and *Peter F. Kaehler*, and that no payment was ever made on such indebtedness by *John H. Kaehler* except by the assignment of said notes and the mortgage by which they were secured. 2. That *Dibblee*, and the firm of Dibblee, Work & Moore, had no notice of any of the mortgages given by *Peter F. Kaehler and wife* on the premises, except the one here in suit and the two held by *Dibblee* himself. 3. That the mortgage in suit, and the one for $3,600 of the same date, running to the brothers and sisters (par. B.), were given with intent to hinder, delay and defraud *Dibblee* and his copartners in the collection of the debt due them. These three findings were excepted to by the appellants.

As conclusions of law the court held, 1. That the mortgage in suit, and that of the same date for $3,600, were void as against *Dibblee* and his copartners. 2. That the mortgage executed by *Peter F. Kaehler and wife* to *Dibblee*, June 2, 1862,

(par. F.) ought to be adjudged a lien upon the premises prior to that of the two mortgages aforesaid. 3. That the mortgage of *Caroline Kritzner* (par. E.) ought to be adjudged the first lien upon the premises. 4. That the $450 mortgage (par. D.) now held by the defendant *Dibblee,* is a valid lien, subsequent to the two mortgages of May 8, 1860. 5. That after sale of the premises the moneys should be brought into court and applied as follows : (1) To the plaintiff the costs of the suit, with $30 solicitor's fees as provided in the mortgage. (2) To *Caroline Kritzner* the amount due her as above stated, with interest to the time of distribution. (3) To the defendant *Dibblee* the amount due on the aforesaid mortgage executed to him (par. F.), with interest to the time of distribution. (4) To the plaintiff the amount found due on the mortgage in suit, and of installments which may become due before the time of distribution, with interest to that time, and also such an additional sum, as, by the law applicable to annuities, will be a reasonable satisfaction for any installments which might thereafter become due during the natural life of *John H. Kaehler.* (5) To *Julius, William H.* and *Frederick Kaehler* and *Eleonora Schleuter,* the amount of the mortgage to them of May 8, 1860 (par. B.), deducting interest to the date of its maturity if paid before that time. (6.) To the defendant *Dibblee* the amount due on the $450 assigned to him by *John H. Kaehler.*— There were some further provisions as to the disposition of the fund, which seem unimportant here.

Judgment was rendered in accordance with these conclusions. The plaintiff, and also the defendants *Julius* and *William H. Kaehler* and *Eleonora Schleuter,* excepted to all the conclusions of law except those above numbered three and four, and appealed from the judgment.

*Mann & Cotzhausen,* for the appellant *Frederick Kaehler,* argued, upon the evidence, that the court erred in its findings of fact: (1.) In finding that the indorsement of the four $100 notes, June 2, 1862, by *John H. Kaehler* to *Dibblee* was a *pay-*

*ment* by the former on account of the indebtedness of *John H.* and *Peter F.* on their three joint and several notes to Dibblee, Work & Moore, — *Dibblee's* own testimony showing that the four notes were indorsed merely as *collateral security.* (2.) In finding that Dibblee, Work & Moore had no notice of any of the several mortgages given by *Peter F. Kaehler and wife* on the premises, excepting the one to his father and mother, and the two now held by *Dibblee* — it appearing positively in proof that the agent of said firm, before he took the real estate and chattel mortgages, examined the records at length, and knew all about every incumbrance on the property, and that the acts of this agent, if not previously authorized, were afterwards ratified by the firm. (3.) In finding that there was *in fact* any *intent* to hinder and defraud *Dibblee* and his copartners when the mortgage in suit was given. 2. Counsel then argued that the court erred in adjudging the mortgage to *Dibblee* to be a prior lien to the one in suit and that of the same date to the mortgagor's brothers and sisters. If *Dibblee* has any rights, he derives them either from his mortgage itself or from the old notes held by Dibblee, Work & Moore. (1.) If he claims under his mortgage, that is on its face subsequent to the others, they being duly recorded, and was taken with full knowledge of their existence, and no reason is shown why it should not take its regular position after those of earlier date. And if the order is changed, are the holders of the earlier mortgages entitled to be subrogated to *Dibblee's* rights under the chattel mortgage which he received at the same time with his mortgage on this real property, and which is a fund beyond our control, and exclusively enjoyed by him? (2.) If Dibblee, Work & Moore have any equities as holders of the old notes of *John H.* and *Peter F. Kaehler*, which can be set up at all in this suit, they must be set up, not by *Dibblee* alone, but by all the copartners as the real parties in interest. (3.) But as holders of such notes they have no equities which can properly be set up in this suit. (a.) There was nothing in the transactions which was fraudu

lent as to them. By those transactions, the mortgage against Kritzner, being the property of *John H. Kaehler*, who was merely an accommodation maker of the notes, was converted into real estate of which the title was vested in *Peter F. Kaehler*, the principal debtor. (b.) The various transactions between *Peter F.* and different members of the family, if at all tainted by fraud, were merely *voidable* at the will of creditors. It was the privilege of the creditors to sanction them, or to disapprove and disavow them. And Dibblee, Work & Moore sanctioned them; consented to take a subsequent mortgage and other securities, with full knowledge of them, and only after the lapse of ten years seek to set them aside. Equity will not enforce stale claims. It will not lend its aid to a creditor who has not only for years slept upon his rights, but has sanctioned and approved what he now complains of. *Smith v. Clay*, Ambler, 645; Story's Eq. Jur., 1520. (c.) All causes of action, at law as well as in equity, which ever existed by virtue of the notes against *John H. Kaehler*, are barred by the statute of limitations. The giving of the mortgage of June 2, 1862, did not of itself, even as against *Peter F. Kaehler*, extend the statute on the original indebtedness. 23 Wis., 393. Even if the assignment of notes made June 2, 1862, by *John H. Kaehler*, constituted a *payment* on the notes to D., W. & M., the statute had run on those notes in June, 1868, before the commencement of this action. The statute applies in equity as well as at law. *Crawford Co. v. Iowa Co.*, 2 Chand., 14; *Fullerton v. Spring*, 3 Wis., 667; 2 Story's Eq. Jur., 1519 and notes. An action for relief on the ground of fraud, in cases which were solely cognizable by a court of chancery, must be commenced within six years. R. S., ch. 138, sec. 17.

*Wm. A. Pors*, for the appellants *Julius* and *Wm. H. Kaehler* and *Eleonora H. Schleuter*, argued, 1. That as to *John H. Kaehler* the statute of limitations had run upon the notes to Dibblee, Work & Moore (R. S., ch. 139, sec. 42; *Cleveland v. Harrison*, 15 Wis., 670), and since they could not be enforced

against the property now in the hands of *John H. Kaehler*, there was no reason for holding that they could be enforced against property which had long since passed out of his hands. 2. That the proof showed clearly that the agent of Dibblee, Work & Moore took the mortgage to them of the same premises with full knowledge of the incumbrances of earlier date, and, because the existence of those incumbrances rendered the mortgage insufficient security, insisted upon and received a chattel mortgage, and had the four $100 notes running from *Peter F.* to *John H. Kaehler* endorsed to him as additional security; that the firm was bound by this knowledge of their agent, even if it was not, as they claim, the particular business entrusted to him (*Abell v. Howe*, Am. Law Reg., March, 1872, 144 and note); and that unless they ratified his acts and accepted the mortgage procured by him, they have no standing in court at all.

*J. H. Jones*, for respondent:

1. The acceptance by *Dibblee* of his mortgage after he knew of the mortgage in suit and the $400 mortgage, did not constitute any waiver of the fraud in the former, nor estop him from claiming priority. *John H.* and *Peter F.* were the joint debtors of his firm, and it was immaterial to that firm which of them held the title to the premises. In either case the entire property was a fund for the payment of the indebtedness. It is immaterial, also, whether *Dibblee* acquired his lien by a mortgage voluntarily given, or by proceedings in equity for that purpose. The taking of the mortgage by him was no agreement that *John H.* need not pay his indebtedness; and unless it relieved him entirely, this mortgage *must* be subject to *Dibblee's*, because *all* his property is liable for the debt. And the plaintiff, who had full knowledge of all the facts, and paid nothing for the mortgage, stands in the same condition as *John H.* would if seeking himself to foreclose this mortgage. 2. The agent by whom the *Dibblee* mortgage was received, was merely an agent to collect and receive the money due on the notes, without any other authority. The evidence showed, and the

court found, that no member of the firm had knowledge of the existence of any other mortgage of the premises than the one in suit and the $400 mortgage. The principal is not held to have ratified the unauthorized acts of an agent, except where the alleged ratification was made with full knowledge of all the material facts. Dunlap's Paley, 171, note (o), and 172, note (q); *Owings v. Hull*, 9 Peters, 608, 629; *Seymour v. Wyckoff*, 10 N. Y., 213. 3. *Dibblee's* claim is not bound by the statute of limitations. The lien of the mortgage is not affected before the lapse of twenty years. If it was ever in equity a prior lien to plaintiff's mortgage, it is so now. As to the mortgage to plaintiff's brothers and sisters, it is shown that *Dibblee* and his partners had no knowledge of it until the commencement of this action; and their cause of action to set it aside as a fraud upon their rights did not accrue until that time (*Hutchinson v. Sheboygan Co.*, 26 Wis., 402), and the statute did not commence until then to run upon such cause of action. Counsel also contended that *John H.*, while indebted to Dibblee, Work & Moore, having voluntarily put his entire property into the hands of *Peter*, and the latter having given *Dibblee* a mortgage on the property to secure his own and his father's joint debt, the mortgage binds the interest of *John H.* as fully as if given by himself; that the act of the son must be treated, under these circumstances, as the act of the father; that *Peter F.* really held the legal title in trust for the creditors of *John H.* (R. S., ch. 84, secs. 7, 8; *Lawrence v. Bank of Republic*, 35 N. Y., 320); that the statutory limitation against the creditor in such a case is *ten* years (*Howell v. Howell*, 15 Wis., 55); and that the transfer of the $400 mortgage to *Dibblee* by *John H. Kaehler* took the case out of the statute altogether, whether such transfer was made as payment or as security. Ang. on Lim., § 240; *Whitney v. Bigelow*, 4 Pick., 110; *Balch v. Onion*, 4 Cush., 559. He also contended that the statute of limitations, to be available, must have been pleaded.

The following opinion was filed at the January term, 1872 :

COLE, J. No one contests the priority of the mortgage given to *Caroline Kritzner*. This mortgage was subsequent in date to the mortgages given by *Peter F. Kaehler* to his father and mother for their support; and to the one given to his brothers and sisters to secure the payment of $3,600 on the first of June, 1875 ; but, by a valid agreement made between the parties interested in those mortgages and *Caroline Kritzner*, they were postponed to her mortgage, which became the first lien upon the property. And this being so, no further considera-tion need be given to the question of the priority of that incum-brance. But the real contest in this case is over that part of the decree of the court below which adjudges the mortgage given to the defendant *Ezra R. Dibblee* for the benefit of the firm of Dibblee, Work & Moore, a lien prior to the mortgage of the plaintiff being foreclosed, and the one given to the brothers and sisters. The court held that both these latter mortgages were fraudulent and void as to *Dibblee's* mortgage, and therefore gave that mortgage the preference over them. Was the court in error in so adjudging that the *Dibblee* mort-gage was prior in right and superior in equity to those mort-gages? Upon the undisputed facts of the case we think this question must be answered in the negative.

It is conceded by all concerned, that *Peter F. Kaehler* bid in the property at the foreclosure sale on the 9th of April, 1860, for the benefit of his father, *John H. Kaehler*, who was the plaintiff in the foreclosure suit. *Peter* paid nothing at the sale except the costs of foreclosure, and consequently the property really belonged to his father. But the parties saw fit to let the sale stand, and that *Peter* should become the owner of the prop-erty, paying the consideration by giving the mortgage to his father and mother for their support, and also by giving the $3,600 mortgage to his brothers and sisters in the way of an advancement out of their father's estate. At this time both

*John H. Kaehler* and *Peter F. Kaehler* were largely indebted to the firm of Dibblee, Work & Moore, upon promissory notes previously given that firm for goods furnished *Peter F.*, in carrying on his mercantile business. They were joint debtors to that firm, and the proposition would seem too plain to admit of serious discussion, that no transfer, as between themselves, could place the property beyond the reach of their creditors. But further than this; in June, 1862, *Peter F. Kaehler* and wife executed and delivered to the defendant *Ezra R. Dibblee*, the mortgage above referred to, for the purpose of securing the payment of the amount due and unpaid upon their joint notes given the firm of Dibblee, Work & Moore.

The mortgage being foreclosed is the one given by *Peter F.* to his father and mother on the 8th day of May, 1860, conditioned for the payment of $480 per annum, in monthly installments of forty dollars, to *John H. Kaehler* and wife, or the survivor of them, so long as they or either of them should live. This mortgage was assigned to the plaintiff in this suit on the 8th of April, 1868, whose equities under the mortgage are the same and no higher than his father's would have been had he retained it. And now suppose *John H. Kaehler* himself were foreclosing this mortgage, would he be heard to say, as against his creditors, that his lien must have the preference and be considered prior in equity to a mortgage given to secure a joint debt due Dibblee, Work & Moore? If so, upon what principle would a court of equity proceed in granting this preference? We really are at a loss to conceive of any principle upon which a court could so adjudge, unless it were upon the ground that a debtor is under no obligation to pay his debts honestly contracted and justly due, which of course will not be contended. It is said that *John H. Kaehler* was an accommodation maker of the notes, but we do not see that this fact affects the question. It is not claimed that the firm of Dibblee, Work & Moore has ever made any agreement to extend the day of payment of those notes, or has done any other act to release him from lia-

bility. True, they may not be entitled to any personal judg-ment against him, for any deficiency which may be found due after a sale of the mortgaged premises, owing to the fact that the statute of limitations has run upon the notes. But otherwise we cannot see why they do not stand in as favorable position as they would if *John H. Kaehler* were seeking to foreclose the mortgage. And in that case it seems to us very clear that a court of equity would not prefer his mortgage to one given to secure the payment of his debt, though the latter were subse-quent in date. For to do so would be to relieve him entirely from the obligation he had contracted, at the expense of credit-ors. It is the duty of men to pay their debts, and the law makes their property liable therefor, except such as is specific-ally exempted. And, as it appears to us, it would be most in-equitable, upon the facts in this case, to give the mortgage assigned the plaintiff a preference over the one given the de-fendant *Ezra R. Dibblee*, as it is admitted the mortgaged prop-erty is entirely inadequate to discharge all the liens upon it. And it is immaterial whether the firm knew of the existence of this mortgage when they received their own, because they were doubtless aware that the property was liable for their debt, whether in the hands of one debtor or the other. They were creditors of both mortgagor and mortgagee when this incum-brance upon the property was created. And it was really a matter of no importance to them what transfer was made of the property, as between the joint debtors, as in any event they could look to that property for the payment of their debts. This is all we deem it necessary to say in respect to that portion of the judgment which gives priority to the *Dibblee* mortgage over the mortgage which the plaintiff is foreclosing. The other mortgage is the one executed by *Peter F. Kaehler and wife* on the 8th of May, 1860, to secure the payment of $3,600 to his brothers and sisters. This mortgage was given at the request of *John H. Kaehler*, as an advance or settlement to his children. It was entirely voluntary, and was void as to creditors. The

doctrine is well settled, that a voluntary conveyance will not be sustained when it deprives the debtor of all means for discharging existing indebtedness. *John H. Kaehler* had but a few hundred dollars of property left after giving to his children this large portion of his estate. He had previously become liable to a large amount on notes given by him and *Peter F.* to the firm of Dibblee, Work & Moore. Now, whether this mortgage was given by *Peter F.*, at the request of his father, with the intent on the part of either or both to hinder, delay and defraud the defendant *Dibblee*, as found by the court below, we shall not stop to inquire. If there was no actual intent to defraud, the mortgage under the circumstances was unquestionably fraudulent in law. For, " in regard to voluntary conveyances, they are unquestionably protected by the statute in all cases where they do not break in upon the legal rights of creditors. But when they break in upon such rights, and so far as they have that effect, they are not permitted to avail against those rights. If a man, therefore, who is indebted, conveys property to his wife or children, such a conveyance is, or at least may be, within the statute; for, although the consideration is good as between the parties, yet it is not, in contemplation of law, *bona fide;* for it is inconsistent with the good faith which a debtor owes to his creditors, to withdraw his property voluntarily from the satisfaction of their claims ; and no man has the right to prefer the claims of affection to those of justice." 1 Story's Eq. Jur., § 355. The good sense and sound morality of these remarks of Mr. Justice STORY are too obvious to require further comment. When applied to the facts of the present case, they are entirely decisive and unanswerable. For *John H. Kaehler*, by causing this voluntary mortgage to be executed in favor of his children, placed himself in a position where he was utterly unable to pay existing creditors. This mortgage ought not, therefore, to have a preference over the lien of the defendant *Dibblee*, since it is a maxim of general application, that " every man is bound to be just before he is generous."

Kaehler vs. Dibblee, impleaded, etc.

For myself I fully agree with the counsel for the defendant *Dibblee*, that the judgment of the court below in respect to the $400 mortgage is quite as favorable to the plaintiff and all the defendants except his client as the facts of the case would warrant. But there is no serious complaint with the judgment in this particular, the whole controversy turning upon the question whether the *Dibblee* mortgage should take precedence of the liens of the plaintiff and of the other defendants, children of *John H. Kaehler*. And upon that question it is believed that enough has been said to vindicate the correctness. of the decree of the court below. The objection that the creditors are invoking the aid of a court of equity to enforce a stale demand, appears to us quite untenable. And the same remark may be made in respect to the objection that they have slept so long upon their rights that they are now estopped from insisting upon the fraudulent character of these mortgages postponed to their own. The *Dibblee* mortgage is a valid lien, and the rights of no one have been prejudiced by the delay in enforcing its collection out of the property. The creditors have indeed been very indulgent in waiting for the payment of the indebtedness due them; but it does not well lie in the mouth of any member of the *Kaehler* family to complain of this forbearance.

*By the Court.*— The judgment of the circuit court is affirmed.

On a motion for a rehearing, the counsel for appellants argued that as *John H. Kaehler* was not a party to the mortgage of 1862, and had done nothing to keep good the notes made by him jointly with *Peter F.*, or to waive the protection of the statute of limitation, unless the court was ready to overrule the statute (secs. 38, 39, 42, ch. 139, R. S.), and to say that the act of one joint debtor in giving security operates as a waiver of the protection of the statute as to the other joint debtor, the decision could not be sustained; that while no transfer between the parties could place the property beyond the reach of the

creditors, and while as against the creditors all such convey-ances were void, still the creditors could bar themselves by neglect to assert their rights within the time limited by the statute, and had done so here; and that if no conveyance at all had been made, but *John H. Kaehler* had himself bid in the property at the sale or foreclosure of the Kritzner mortgage, and still retained it, neither this property nor any other belong-ing to him would now be subject to the payment of the notes held by Dibblee, Work & Moore, those notes being outlawed.

The motion for a new trial was denied at the January term, 1873.